```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                        Docket #14m2848
UNITED STATES OF AMERICA,           :

                    Plaintiff,      :

   - against -                      :

GIBRON LOPEZ, et al.,               : New York, New York
                                      December 19, 2014
                    Defendants.      :

------------------------------------ :
```

                      PROCEEDINGS BEFORE
                THE HONORABLE ANDREW J. PECK,
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


APPEARANCES:

For the United States      U.S. ATTORNEY'S OFFICE
     of America:           BY:  MARGARET GARNETT, ESQ.
                           One St. Andrew's Plaza
                           New York, New York 10007

For Defendant Lopez:       PELUSO & TOUGER
                           BY:  DAVID TOUGER, ESQ.
                           70 Lafayette Street
                           New York, New York 10013

For Defendant Ortiz:       FEDERAL DEFENDERS OF NEW YORK
                           BY:  MARK GOMBINER, ESQ.
                           52 Duane Street, Tenth Floor
                           New York, New York 10007

For Defendant Rodriguez:   JOSHUA DRATEL, ESQ.
                           29 Broadway, Suite 1412
                           New York, New York 10006

SPANISH INTERPRETER PRESENT


Transcription Service:  Carole Ludwig, *Transcription Services*
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

APPEARANCES CONTINUED:

For Defendant Guerrero:        STEWART ORDEN, ESQ.
                               Two Gannett Drive, Suite 418
                               White Plains, New York 10604

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> |
|---|---|---|---|---|
| None | | | | |

<u>**E X H I B I T S**</u>

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|
| None | | | | |

1          THE COURT:   U.S. v. Jose Cortez, Jose Rodriguez,

2   Luis Guerrero, Gibron Lopez.   Counsel, state your name for

3   the record starting with the Government.

4          MS. MARGARET GARNETT:   Good afternoon, Your

5   Honor, Margaret Garnett for the United States.   With me is

6   Special Agent Amanda Schweiner from the ATF.

7          MR. MARK GOMBINER:   Mark Gombiner, Federal

8   Defenders, for Mr. Jose Ortiz.   Good afternoon, Judge.

9          MR. DAVID TOUGER:   Good afternoon, Your Honor,

10   David Touger for Mr. Gibron Lopez.

11          MR. JOSHUA DRATEL:   Good afternoon, Joshua Dratel

12   for Jose Rodriguez.

13          MR. STEWART ORDEN:   Your Honor, Good afternoon,

14   Stewart Orden on behalf of Mr. Guerrero.

15          THE COURT:   All right, let me now advise all the

16   defendants of certain rights that you have.   This is not a

17   trial.   You're not called upon to answer the charges

18   against you at this time.

19          You have the right to remain silent.   You're not

20   required to make any statements.   Even if you've already

21   made any statements to the authorities, you need not make

22   any further statements.   Anything you do say can be used

23   against you.

24          You have the right to be released eitehr

25   conditionally or unconditionally pending trial, unless I

1  find that there are no conditions that would reasonably

2  assure your continued presnce in court and the safety of

3  the community.  If the prosecutors ask me to detain you

4  pending trial, you're entitled to a prompt hearing on

5  whether those conditions exist.

6          Starting with Mr. Ortiz, do you understand all of

7  these rights?

8          MR. ORTIZ:   Yes, I do.

9          THE COURT:   All right, does Mr. Ortiz need an

10 interpreter?

11         MR. GOMBINER:   Yeah.

12         THE COURT:   Okay.  Fortunately, the best of our

13 staff language interpreters is standing right here.  All

14 right, Mr. Ortiz, do you understand these rights?

15         MR. ORTIZ:   Yes.

16         THE COURT:   Mr. Lopez, do you understand these

17 rights?

18         MR. LOPEZ:   Yes, Your Honor.

19         THE COURT:   And Mr. Rodriguez.

20         MR. RODRIGUEZ:  (indiscernible)

21         THE COURT:   Excuse me?

22         MR. RODRIGUEZ:   Yes, Your Honor.

23         THE COURT:   Thank you.  And, Mr. Guerrero, do you

24 understand these rights?

25         MR. GUERRERO:   Yes, Your Honor.

1    THE COURT:  You each have the right to be

2  represented by counsel during all court appearances and

3  during any and all questioning by the authorities.  If you

4  cannot afford an attorney, I will appoint one today to

5  represent you throughout this case at no cost to you.  Mr.

6  Guerrero, do you understand your rights to counsel?

7    MR. GUERRERO:  Yes, sir.

8    THE COURT:  And, Mr. Rodriguez, do you understand

9  your rights to counsel?

10    MR. RODRIGUEZ:  Yes, sir.

11    THE COURT:  And, Mr. Lopez, do you understand

12  your right to counsel?

13    MR. LOPEZ:  Yes, Your Honor.

14    THE COURT:  And Mr. Ortiz?

15    MR. ORTIZ:  Yes, Your Honor.

16    THE COURT:  All right, let's start with Mr.

17  Guerrero.  Please stand.  And actually it needs, Mr. Orden,

18  it needs to be signed.  So while he's doing that, let's go

19  to Mr. Rodriguez.  Please stand.  Is this your signature on

20  the financial affidavit?

21    MR. RODRIGUEZ:  Yes, sir.

22    THE COURT:  Raise your right hand please.  Do you

23  solemnly swear that the information in your financial

24  affidavit is true, complete, and correct, so help you God?

25    MR. RODRIGUEZ:  Yes, sir.

1          THE COURT:   Very good.   Be seated, I approve your

2    application and appoint Mr. Dratel to represent you.

3          Okay, now we're back to Mr. Guerrero.   Please

4    stand.   Obviously, this is your signature on the financial

5    affidavit, correct?

6          MR. GUERRERO:   Yes, sir.

7          THE COURT:   Raise your right hand.   Do you

8    solemnly swear the information in your financial affidavit

9    is true, complete, and correct, so help you God?

10          MR. GUERRERO:   Yes, Your Honor.

11          THE COURT:   All right, I approve your application

12    and appoint Mr. Orden to represent you.   Mr. Lopez, please

13    stand.   Is that your signature?

14          MR. LOPEZ:   Yes, it is.

15          THE COURT:   Raise your right hand.   Do you

16    solemnly swear that the information in your financial

17    affidavit is true, complete, and correct --

18          MR. LOPEZ:   Yes, it is, Your Honor.

19          THE COURT:   Very good, I approve your application

20    and appoint Mr. Touger to represent you.   And, finally, Mr.

21    Ortiz, please stand.   Is this your signature on the

22    financial affidavit?

23          MR. ORTIZ:   Yes.

24          THE COURT:   Raise your right hand.   Do you

25    solemnly swear that the information in your financial

8

1   affidavit is true, complete, and correct, so help you God?

2          MR. ORTIZ:   Yes.

3          THE COURT:   All right, I approve your application

4   and appoint Mr. Gombiner to represent you.  Give me a

5   moment here.

6          (pause in proceeding)

7          THE COURT:  Okay, Agent, is it Schweiner?

8          AGENT SCHWEINER:   Yes, sir.

9          THE COURT:   Please stand, raise your right hand.

10  Do you solemnly swear that the information in the complaint

11  is true and correct?

12          AGENT SCHWEINER:   I do.

13          THE COURT:   Be seated.  Mr. Gombiner, have you

14  received a cop of the complaint?

15          MR. GOMBINER:   Yes, I have, Judge, I reviewed the

16  substance of it with Mr. Ortiz.  We waive its public

17  reading.

18          THE COURT:   All right, Mr. Touger.

19          MR. TOUGER:   Yes, Your Honor.  I reviewed the

20  complaint with Mr. Lopez, and I waive its public reading.

21  And it's Touger, by the way.

22          THE COURT:   Sorry.

23          MR. TOUGER:   That's okay, nobody gets it.

24          THE COURT:   Mr. Dratel.

25          MR. DRATEL:   Yes, Your Honor, we have reviewed it

1    with Mr. Rodriguez, waive its public reading.

2              THE COURT:   And, finally, Mr. Orden.

3              MR. ORDEN:   The same, Your Honor, except I

4    reviewed it with my client.

5              THE COURT:   All right, very good.  All right,

6    each of you, each of the defendants has a right to a

7    preliminary hearing at which the prosecutors will have the

8    burden of establishing that there is probable cause to

9    believe that the crime being charged was committed and that

10   you are one of the persons who committed it.  If probable

11   cause is established, the prosecutors get to go to trial

12   against you.  If probable cause is not established, the

13   Court will dismiss the charges.

14              If you remain in custody, the preliminary hearing

15   will be held within 14 days; if you're not in custody, it

16   will be held within 21 days, unless under either situation

17   you, through your attorney, agree to have the hearing 30

18   days from today.  I should advise you that a preliminary

19   hearing will not be held if, before the date it's

20   scheduled, you're indicted by a grand jury or if the

21   prosecutors with your and your attorneys' permission file a

22   criminal information against you.  And traditionally one of

23   those two things is what happens in this district.

24              I'll set the preliminary hearing date in a moment

25   after addressing the issue of bail with counsel.  What is

1   the Government's position on bail?

2            MS. GARNETT:   Your Honor, the Government's

3   seeking detention for all four defendants.

4            THE COURT:   All right, Mr. Gombiner, are you

5   prepared to proceed at this time?

6            MR. GOMBINER:   Judge, based on Mr. Ortiz's parole

7   status, we don't have any application at this time.

8            THE COURT:   All right, detention as to Mr. Ortiz

9   ordered on consent without prejudice to any future bail

10   application.  Preliminary hearing date, Mr. Gombiner.

11            MR. GOMBINER:   Fourteen days.

12            THE COURT:   All right, January 5.  Okay, next, as

13   to Mr. Lopez, are you ready to proceed, counsel?

14            MR. TOUGER:   Yes, Your Honor.

15            THE COURT:   All right, let's hold that for a

16   minute.  As to Rodriguez, Mr. Dratel.

17            MR. DRATEL:   Yes, we're ready to proceed.

18            THE COURT:   All right, and as to Guerrero, Mr.

19   Orden, are you ready to proceed?

20            MR. ORDEN:   I am, Your Honor, I think my

21   colleagues want me to proceed first.

22            THE COURT:   All right, well, first, we hear from

23   the Government.  So let's hear from the Government.

24            MS. GARNETT:   As Your Honor knows from reading

25   the complaint, this is a presumption, a case that carries

1  the statutory presumption of detention.  In addition, Your

2  Honor, I think the charges in the complaint are very

3  serious.  Both Mr. Lopez and Mr. Guerrero are openly

4  discussing repeatedly in recorded conversations the

5  expectation that the anticipated victims of the robbery

6  would have to be killed as part of the robbery and that

7  they were prepared to do so.  Indeed, it was Mr. Lopez who

8  first initiated discussion of the possibility that people

9  would have to be killed.

10         Mr. Lopez was the initiator of the robbery.  It's

11  true that as the plan proceeded it was a sting in control

12  of the Government, but the entire plan was initiated by Mr.

13  Lopez proposing to the CI that he work with him to carry

14  out a drug robbery.  In addition, Mr. Lopez and Mr.

15  Guerrero over multiple meetings were actively involved in

16  moving the plan forward, and Mr. Rodriguez was also a

17  participant in certain of those conversations, although

18  joining later than Mr. Lopez and. Mr. Guerrero.

19         With respect to Mr. Lopez, he has four prior bench

20  warrants.  He's currently unemployed.  And we respectfully

21  submit, with regard to Mr. Lopez, that he presents both a

22  danger to the community and a significant risk of non-

23  appearance.

24         Mr. Guerrero's also unemployed.  He has a prior

25  robbery felony, admittedly as a juvenile, but, nonetheless,

1  a prior armed robbery, as well as a 2008 bench warrant.

2  And given all the factors and in particular the offense

3  conduct, we think he's also a strong candidate for

4  detention.

5        Mr. Rodriguez had his probation revoked in 2008,

6  and he also has a pretty significant arrest and conviction

7  history, and given the nature of the offense and his open

8  discussion of violence, two loaded firearms in the car, and

9  his criminal history, we think he's also a strong candidate

10 for detention.

11        THE COURT:   All right, Mr. Orden, you said your

12 colleagues gave you the short straw, so go ahead.

13        MR. ORDEN:   They did, Judge.  Perhaps the best

14 straw.  I understand Your Honor has to review the bare

15 contents of the complaint, and one doesn't know yet what

16 the actual recordings will reveal.  I think a number of the

17 quotes attributed to my client, first of all, are subject

18 to interpretation in terms of what actually may have said.

19 It's coded language which they chose to interpret a

20 particular way.  But notwithstanding that, I understand

21 what you're left with, which is the flat complaint itself.

22        But I think one of the things you have to assess

23 in assessing my client is likelihoods.  My client when he

24 was 14 years old had his first and only brush with anything

25 resembling violence.  I can't tell what that is from really

1   reading it.  It seems to me that it's a bunch of 14 years

2   old beating up and taking something from another youth, but

3   that was adjudicated a youthful offender.  That's over 11

4   years ago when he was 14.  So that's it.  Since then he's

5   had two extremely minor brushes with the law.

6           So I would ask you to consider, given the nature

7   of the charges and what they allege my client to have been

8   engaged in and what the specific language may or may not

9   have been and what he did here, what is the likelihood that

10  my client actually had in his mind that which they suggest.

11  He's 26 years old, he's never virtually been in trouble

12  with the law since he was 14.  His status in the community

13  has been --

14          THE COURT:   Well, other than two prior drug

15  collars and actually both are convictions.

16          MR. ORDEN:   They were disorderly conduct

17  violations, Your Honor.  One was the possession as a class

18  B misdemeanor, which is a nothing in the State of New York

19  in terms of drug quantity, and the other, while they

20  charged as a felony, they reduced it to a disorderly

21  conduct violation which tells you something about the

22  seriousness and the actual truth of those original charges.

23  While they do tend to reduce things in New York State, they

24  don't reduce class B felonies to sell narcotics to

25  violations and (inaudible) when they're serious.

1          So with all due respect, I think that more

2  accurately reflects what he's done since --

3          THE COURT:   Based at least on danger, do you have

4  a significant package?

5          MR. ORDEN:   What I have, Your Honor, first of

6  all, is that the information I know that Pretrial tried to

7  reach his girlfriend.  She's here in court today --

8          THE COURT:   That doesn't help  me if it's not

9  verified in the report, which raises the question of, and

10  this will go for the other two defendants, whether you're

11  better off making an on-the-fly bail package suggestion and

12  now and possibly losing --

13          MR. ORDEN:   I'll make it now.  She can

14  corroborate everything.  They couldn't reach her because

15  she was in the courtroom.  They take her phone.  Her

16  mother's in the courtroom and a friend of the family who

17  are --

18          THE COURT:   All right, what's your package?

19          MR. ORDEN:   Five financially responsible people

20  to cosign a bond in the amount that the Court deems

21  sufficient --

22          THE COURT:   What amount do you suggest?

23          MR. ORDEN:   Hundred thousand dollars, Your Honor.

24          THE COURT:   And do the five people collectively

25  earn in excess of a hundred thousand?

1          MR. ORDEN:   I would have to ask.  I see his

2  girlfriend is shaking yes, her head yes.  May I have 30

3  seconds?

4          THE COURT:   Very briefly, which is why I was

5  suggesting you might want to put this off.

6          MR. ORDEN:   Yes, Your Honor.  Five financially

7  responsible people that earn in excess of a hundred

8  thousand dollars.

9          THE COURT:   Okay.  What else?

10         MR. ORDEN:   That's all I have to offer, Judge.  I

11  don't think that's going to get any better which is why I'm

12  doing it on the fly.

13         THE COURT:   All right, let me hear from the

14  Government as to Guerrero.  Anything further?

15         MS. GARNETT:   Judge, I think the proposed bail

16  package does almost nothing to address the danger to the

17  community issue.  Where the proof on Mr. Guerrero is very

18  strong, I think detention's warranted.

19         THE COURT:   All right, let me think about it.

20  Next, who goes next under your sharing deal.

21         MR. TOUGER:   I'll go next, Your Honor.

22         THE COURT:   Go ahead.

23         MR. TOUGER:   Your Honor, (inaudible) on behalf of

24  Gibron Lopez.  First, let me deal with the issue of the

25  bench warrants that's in his criminal history.  If you

1   notice, Your Honor, both times he was arrested for

2   obviously very minor charges, he pled guilty the day after

3   he was arrested in court.  And then the bench warrants came

4   because he was sentenced to pay a fine of $75 on the

5   marijuana case, and my client tells me on (indiscernible)

6   convicted of disorderly conduct, which is not even a crime,

7   it's a violation, the fine there was $50 and one day of

8   community service.  And when he did not have the $50 to

9   pay, he didn't show up in court, not knowing that he could

10  get an adjournment.  And that's why, if you see, what he

11  did was (indiscernible), he was given a five-day term of

12  incarceration as opposed to a $50 fine.  And the same thing

13  happened with the marijuana case, although ultimately he

14  did pay the $75 fine.

15          So the bench warrants that were issued were not in

16  the case that's actually pending.  They were while he was

17  trying to get the money together.

18          THE COURT:   That still doesn't make me confident

19  that he's going to be here when he has to.  But continue.

20          MR. TOUGER:   Finally, Your Honor, my client has

21  never lived anywhere else but New York.  He's lived with

22  his mother for basically his entire life except for a stint

23  in the United States Army.  He has no ties to any other

24  community, no relatives anywhere else but New York City.

25  And I would ask Your Honor that you, along with what

1   Pretrial Supervision recommends, that you set a bond in the

2   amount of $100,000 which we would add to that, Your Honor,

3   that he be given house arrest.  Therefore, it would pose no

4   threat to the community as he would be confined to his

5   home, except to come to court and to see me on the approval

6   of the court, I mean of Pretrial Services.  We'd ask for

7   the same $100,000 bond with house arrest.

8           THE COURT:   How many cosigners do you have if I

9   were going to grant bail?

10          MR. TOUGER:   The most he could get, Your Honor,

11  would be three.

12          THE COURT:   Okay.  Anything further from the

13  Government on Mr. Lopez?

14          MS. GARNETT:   Judge, only that we don't think

15  that, as Your Honor is well aware, that detection with

16  electronic monitoring is far from perfect, and we don't

17  think that, given Mr. Lopez's role and the seriousness of

18  the conduct, that it's sufficient to address the risk of

19  danger to the community.

20          THE COURT:   All right.  Finally, as to Mr.

21  Rodriguez.

22          MR. DRATEL:   Thank you, Your Honor.  We'll start

23  out with the allegations because they really don't apply to

24  Mr. Rodriguez in terms of the complaint.  The complaint is

25  quit thin, insufficient at all with respect to Mr.

1  Rodriguez.  He doesn't appear until paragraph 19 in the

2  factual recitation.  And there's only discussion here of

3  drugs and drug pricing.  There's no discussion of robbery,

4  there's no discussion of weapons, there's no discussion of

5  violence.  And like I said, I don't know that it even makes

6  out a robbery case at all, and even if it makes a drug case

7  or a conspiracy at all.

8          So on the facts of the case, there's a substantial

9  difference here in the conduct that's alleged.  He's a

10 latecomer; other than the driver, he's the last person

11 involved.  He's not involved in any of those preliminary

12 conversations.  This is day of, yesterday.  So the case

13 against him is thin.

14         THE COURT:   Well, I'm not sure I agree with that,

15 but go ahead, what else?

16         MR. DRATEL:   He has family here, and, again, same

17 situation, because obviously people don't have phones here,

18 his girlfriend was unable to verify anything, but she's

19 been here since 10 o'clock this morning, since I've been

20 here.  And his brother, he has a half brother who's here as

21 well.  And they've been waiting all day.  They're available

22 as cosigners.  There are other family who are not here who

23 we think could be available as cosigners.  So I would

24 propose four cosigners, Your Honor.  The bond, again, in

25 the amount of a hundred thousand.  Home detention,

1   electronic monitoring, strict Pretrial supervision,

2   whatever conditions the Court thought appropriate to impose

3   we would accept.

4            With respect to prior record, there's one

5   substantial conviction obviously in the state court, and

6   what's important about that case, other than the warrants

7   for marijuana possession and the warranting that went on,

8   that someone were to return two days later on a warrant.

9   So it's really a missed court appearance is that for that

10  case where he had a jail term, he reported.  There's no

11  warrant in that case with respect to that.  So he has been

12  responsible.  The most important the case has been, the

13  more responsible he has been.  So it's really sort of

14  counterintuitive.

15           And there are a couple of issues that are listed

16  as recent in the Pretrial report as negatives which I think

17  are really not reasons to deny bail.  One is unemployed.

18  That's not a reason to deny bail.  The other is marijuana

19  use.  It's not a reason to deny bail.

20           And also, I just want to point out that this case

21  reeks of this very, very same scenario that's been covered

22  in two articles in the New York Times in recent weeks, and

23  two courts out west, district courts have dismissed cases

24  for outrageous Government conduct.  This conveniently has

25  the initial entreaty coming from one of the defendants

1    rather than the informant.  We will see what those

2    conversations show --

3               THE COURT:  I'll let you --

4               MR. DRATEL:  -- what the evidence shows --

5               THE COURT:  I'll let you --

6               MR. DRATEL:  -- but this case has that quality to

7    it.  So I think all of that makes Mr. Rodriguez, who is a

8    lifelong New Yorker -- and also the other thing about

9    travel, that he has a passport is not a reason to deny him

10   bail.  Also, his foreign travel, 2002, this is not an issue

11   for bail in this context.  You can't take someone's prior

12   history, pick out the worst of it, and then say that he's

13   not a candidate for bail.

14              THE COURT:  Okay, thank you all.

15              MR. DRATEL:  Thank you, Your Honor.

16              THE COURT:  Unless the Government has anything

17   else to say.

18              MS. GARNETT:  Your Honor, if you want to hear

19   from me further, I can comment on Mr. Rodriguez.

20              THE COURT:  If you wish, if there's anything to

21   add.

22              MS. GARNETT:  The only thing I wanted to point

23   out, Judge, is Mr. Rodriguez's essentially unbroken string

24   of criminal activity in the last ten years.  He's twice

25   been on probation or parole and promptly returned to

1 criminal activity.  He has a prior felony narcotics

2 conviction, two bench warrants in this year alone.  I just

3 don't see that he's a candidate for release.

4          MR. DRATEL:   Your Honor, he completed his parole

5 successfully.  He's not on supervision currently.  He did

6 have probation revoked when he was 19 years old.

7          THE COURT:   All right --

8          MR. DRATEL:   Seven years ago.

9          THE COURT:   All right, the Court sets bail as

10 follows –

11          MR. ORDEN:   Your Honor, may I just offer one

12 other thing.

13          THE COURT:   Yeah.

14          MR. ORDEN:   I don't know if you're setting any

15 bail.  But Mr. Guerrero would, if it's a consideration,

16 certainly be amenable to be placed on electronic monitoring

17 and house arrest.

18          (pause in proceeding)

19          THE COURT:   All right, Court sets bail for each

20 of the three defendants as follows:  a $250,000 personal

21 recognizance bond cosigned by five financially responsible

22 persons, further secured by a $25,000 cash or property.

23 Travel restricted to the Southern and Eastern Districts of

24 New York, surrender travel documents, no new applications.

25 Strict Pretrial supervision with drug testing and

1  treatment.  Home incarceration with electronic monitoring,

2  each defendant to pay for their electronic monitoring.  In

3  addition, they obviously need to have landlines in order to

4  have electronic monitoring.  Each defendant to be detained

5  until all conditions are met.

6          Preliminary hearing date for the remaining three

7  defendants.  Counsel.  Fourteenth day --

8          ATTORNEY:  Waive to the 30th day, Your Honor.

9          ATTORNEY:  We'll waive to the 30th day, Your

10 Honor.

11         ATTORNEY:  Waive to the 30th, Judge.

12         PRETRIAL SERVICES:  Your Honor.

13         THE COURT:  Yes.

14         PRETRIAL SERVICES:  If we can have mental health

15 counseling as a condition of bail for Mr. Lopez.  He

16 reported depression.

17         THE COURT:  Any objection?

18         MR. TOUGER:   No, Your Honor.

19         THE COURT:  All right.  Thirtieth day is January

20 20.  All right, anything else on this matter?

21         MS. GARNETT:   Nothing from the Government, Your

22 Honor.  Thank you.

23         THE COURT:  And obvious the Government or the

24 defense have the right to go to a Part 1 judge.  If you do,

25 let me know the results.

23

1              THE COURT:   Okay, next case.   Everyone move out

2    on this one quickly and quietly.

3              (Whereupon the matter is adjourned.)

```
 1                                                        24

 2                      C E R T I F I C A T E

 3

 4          I, Carole Ludwig, certify that the foregoing

 5   transcript of proceedings in the United States District

 6   Court, Southern District of New York, United States of

 7   America v. Lopez, Docket #14m2848, was prepared using

 8   digital transcription software and is a true and accurate

 9   record of the proceedings.

10

11

12

13

14   Signature_____

15

16   Date:  December 22, 2014

17

18

19

20

21

22

23

24

25
```