

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 28, 2015

**BY ECF**

The Honorable Colleen McMahon
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Jose Rodriguez*
            S2 15 Cr. 002 (CM)

Dear Judge McMahon:

      The Government respectfully submits this memorandum in advance of the sentencing of Jose Rodriguez, scheduled for November 5, 2015, at 2:15 p.m.  Based on the offense conduct set forth in the Presentence Report ("PSR") and the arguments below, the Government submits that a sentence within the stipulated Guidelines range of 37 to 46 months' imprisonment is appropriate in this case.  In the PSR, the United States Probation Office ("Probation") recommends a sentence of 46 months.[1]  (PSR at ¶ 25).  The defendant, on the other hand, seeks a sentence "substantially below the applicable advisory Sentencing Guidelines."  (Def. Mem. 1).

**I.**      **Offense Conduct**

      The crime to which Rodriguez pled guilty – possession of a firearm, having been previously convicted of a felony– merits a Guidelines sentence.  The context in which he committed the instant offense is relevant.  As set forth in the PSR, on December 18, 2014, the defendant joined a plot to commit an armed robbery of a suspected narcotics distributor of a large quantity of cocaine, as part of a Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") sting robbery operation.  Rodriguez's co-defendants, Gibron Lopez and Luis Guerrero, planned the armed robbery with an ATF undercover agent posing as a disgruntled narcotics courier.

---

[1] The Presentence Investigation Report ("PSR") calculates a Guidelines range of 46 to 57 months' imprisonment.  (PSR ¶ 95).  As detailed more fully below, although the Government agrees with the Guidelines calculation set forth in the PSR, the Government submits that a sentence within the stipulated Guidelines range of 37 to 46 months' imprisonment would be sufficient, but not greater than necessary, to meet the legitimate purposes of sentencing.  The sentence of 46 months recommended by the Probation Office falls within both ranges.

On the day of the planned robbery, December 18, 2014, Rodriguez met Lopez, Guerrero and a confidential source (the "CS"). (PSR ¶ 19). Lopez discussed the robbery plan with Guerrero, Rodriguez, and the CS. Lopez stated that he believed two individuals would be present in the stash house, one of whom was armed, and that there would be "14 birds" in the stash house, referring to kilograms of cocaine. (PSR ¶ 19). Lopez further discussed the possibility of robbing the stash house itself, as opposed to robbing only the undercover agent of the two kilograms of cocaine that he indicated he was supposed to pick up. (PSR ¶ 19). In response, Rodriguez stated that Rodriguez was "going there for all 12," and that he did not get involved for just "two birds." (PSR ¶ 19). The co-conspirators also discussed the plan for the robbery, including that the CS would hang back while the others, including Rodriguez, rushed into the stash house. (PSR ¶ 19).

After this discussion, a fourth co-conspirator, Jose Ortiz, subsequently arrived in a van, picked up the CS, Lopez, Guerrero, and Rodriguez, and drove to the location where they were to meet with the undercover officer and stage for the planned robbery. (PSR ¶ 20). During the ride in the van, Rodriguez and the CS discussed "birds" of "coke" and "dope," and the CS stated that there were two individuals in the stash house, one in the back with the "work" (meaning narcotics) and one in the front with a gun. (PSR ¶ 20). Ortiz told his co-conspirators that he already had a "grip" (meaning a gun) on him. (PSR ¶ 20). Upon their arrival to the meet location in Yonkers, New York, crew members observed what they believed to be a number of possible law enforcement vehicles, and fled the location in the van without meeting the undercover agent. (PSR ¶ 22). Shortly thereafter, agents stopped the van and arrested its occupants. (PSR ¶ 22). A search of the van revealed two loaded firearms stashed in the driver's side front door panel – a Keltec P-11 nine millimeter semi-automatic pistol loaded with eight live rounds, and a Sentinel MK IV .22 caliber revolver loaded with seven live rounds. (PSR ¶ 24).

The defendant argues that the context of his instant offense is not relevant for two primary reasons: (1) Rodriguez joined his co-conspirators hours before the planned robbery, and (2) the intended robbery was part of a sting operation. While both accurate, neither of defendant's arguments merits leniency. First, that the defendant did not participate in planning the robbery does not detract from the fact that he was eager to and had every intention of actively participating in an armed robbery of twelve kilograms of cocaine from a stash house, and that he possessed a loaded firearm to assist in doing so. Second, the potential concerns raised by sting robberies are not present here. Neither the defendant nor any of his co-conspirators were targeted by law enforcement. This law enforcement operation began because Lopez contacted the CS to inquire about potential robbery targets. (*See* PSR ¶ 10). And, in any event, Rodriguez was never contacted by law enforcement – he was a willing participant in the robbery plan, and he did not have any encouragement, whatsoever, from law enforcement. Although the defendant did not plead guilty to a robbery offense, his possession of the loaded firearm must be considered in this context.

## II.   Criminal History

The defendant's criminal history likewise counsels in favor of a sentence within the stipulated Guidelines range. As the PSR makes clear, Rodriguez has a lengthy criminal

background, encompassing four misdemeanor convictions and one felony conviction since 2007. (*See* PSR ¶¶ 45-50). In June 2007, the defendant was arrested for stealing a cellphone out of a victim's hand. (PSR ¶ 45). The defendant pled guilty to petit larceny and was sentenced to three years' probation in September 2007. (PSR ¶ 45). In March 2008, the defendant's term of probation was revoked and he was sentenced to five months' imprisonment. (PSR ¶ 45). Shortly after his release from prison, the defendant engaged in repeated criminal activity. In less than two years, between December 4, 2008 and October 21, 2010, the defendant, on three separate occasions, was charged and subsequently convicted of criminal possession of a controlled substance in the seventh degree. (PSR ¶¶ 46, 47, 49). Although all misdemeanor convictions, one resulted from the defendant's possession of 43 Ziploc bags of crack cocaine, demonstrating that Rodriguez was distributing narcotics, and not merely possessing them for his personal use. (*See* PSR ¶ 47.) And, during that same two year time period, the defendant was charged, and subsequently convicted of, criminal sale of a controlled substance in the third degree, a felony, based on his sale of crack cocaine to an undercover officer. (PSR ¶ 48.)

The defendant argues that criminal history category IV, stipulated to in the defendant's plea agreement with the Government, overstates his criminal history. This argument is meritless. First, criminal history category IV actually *understates* the defendant's criminal history. The defendant's plea agreement with the Government did not include criminal history points for the defendant's 2007 petit larceny conviction because the defendant was adjudicated as a youthful offender and, as a result, the Government was not aware of that conviction at the time of the plea. Probation correctly assigns two criminal history points to the 2007 conviction, and therefore has determined that the defendant has eleven criminal history points and is in criminal history category V. Although the Government agrees that the criminal history category determined by Probation is correct, the Government's nonetheless submits that a sentence within the stipulated Guidelines range of 37 to 46 months' imprisonment, as agreed to in the defendant's plea agreement with the Government, would be sufficient, but not greater than necessary, to meet the legitimate purposes of sentencing. In this context, where the defendant's stipulated Guidelines range is based on a lower criminal history category than is technically correct, defendant's argument that his criminal history category is overstated falls flat.

Second, in arguing that defendant's criminal history category is overstated, the defendant urges the Court to consider the sentences imposed for the defendant's prior convictions and the length of time the defendant actually served, citing *United States* v. *Mishoe*, 241 F.3d 214, 219 (2d Cir. 2001). The Government agrees that the Court should consider the defendant's prior sentences and the length of time he has served. Doing so counsels in favor of a Guidelines sentences. In *Mishoe*, the Second Circuit reviewed a district judge's decision granting a downward departure after applying the career offender Guidelines provisions. The Court explained its reasoning for considering prior sentences:

> Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses. If, for example, a defendant twice served five or six years and thereafter committed another serious offense, a current sentence might not have an

3

>adequate deterrent effect unless it was substantial, perhaps fifteen or twenty years. Conversely, if a defendant served no time or only a few months for the prior offenses, a sentence of even three or five years for the current offense might be expected to have the requisite deterrent effect.

*Mishoe*, 241 F.3d at 220. Here, the defendant was sentenced to two years' imprisonment and served only 11 months for his prior felony conviction. Clearly, he was not deterred. Just over three years after he was released from prison he committed the instant offense – he possessed a loaded firearm on his way to commit an armed robbery of 12 kilograms of cocaine from drug dealers. Moreover, the defendant's criminal conduct has escalated in severity over time, from petit larceny, to possessing drugs, to selling drugs, to possessing a firearm as part of an armed robbery. A sentence within the stipulated Guidelines range is called for in this case to adequately deter the defendant from committing additional crimes. A significant sentence of imprisonment is needed to send a message to the defendant that such conduct is not tolerated by society, to deter him from future violations of the law, and to protect the public from further crimes of the defendant. *See* 18 U.S.C. §§ 3553(a)(2)(B), 3553(a)(2)(C).

### III. Conclusion

In summary, the Government submits that a sentence within the stipulated Guidelines range of 37 to 46 months' imprisonment appropriately reflects Rodriguez's offense conduct, meets the sentencing goals of specific and general deterrence, and would serve to protect the public from further crimes of the defendant.

>Respectfully submitted,
>
>PREET BHARARA
>United States Attorney
>
>By: _____/s/_____
>Gina M. Castellano
>Christopher J. DiMase
>Assistant United States Attorneys
>Southern District of New York
>(212) 637-2224 / 2433

cc: Joshua L. Dratel, Esq. (by electronic mail)